UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

JOHNATHAN HOUSE,                          )
                                          )
                    Plaintiff,            )
                                          )
          v.                              )       No. 1:25-cv-01280-RLY-TAB
                                          )
MEIJER, INC.,                             )
                                          )
                    Defendant.            )

**ORDER ON SHOW CAUSE HEARING AND PENDING MOTIONS**

On March 25, 2026, the Court held a show cause hearing to consider whether to sanction

Plaintiff Johnathan House for his failure to attend a February 18, 2026, status conference and

meet case deadlines and discovery obligations.  These actions—including inappropriate conduct

directed at defense counsel—amount to a pattern of disrespect for the Court, opposing counsel,

and the litigation process.  As explained below, sanctions are appropriate.

This order also addresses Plaintiff's motion for sanctions [Filing No. 25] and his "Motion

for Order Confirming Receipt of Discovery Materials, for *Pro Se* Accommodations, and to

Address Courtroom Conduct Concerns" ("the post-hearing motion") [Filing No. 28], which are

denied for the reasons discussed below.

**I.      Background**

Plaintiff filed this lawsuit asserting a personal injury claim after he allegedly fell in the

parking lot of Defendant Meijer, Inc.'s store.  Defendant served discovery on Plaintiff on

November 11, 2025, and wrote Plaintiff pursuant to Fed. R. Civ. P. 37 and requested the overdue

responses on January 16, 2026.  [Filing No. 21-1.]  Plaintiff responded with a January 19, 2026,

letter containing expletives, personal attacks, and a refusal to produce records.  Plaintiff's January

1

19 letter called Defendant's Rule 37 letter "phony" and "pure garbage"; told defense counsel to "stop the bullshit" and "cut the crap"; and called defense counsel incompetent, pathetic, and unethical. [Filing No. 21-2.] In response, Defendant moved to compel Plaintiff to respond to discovery. [Filing No. 21.]

On February 18, 2026, the Court held a telephonic status conference. Plaintiff failed to appear. Following the February 18 conference, the Court set the March 25 show cause hearing and ordered Plaintiff to do the following by March 4, 2026:

1. provide responses to Defendant's interrogatories and requests for production that are "full and complete and without objection;"

2. file preliminary witness and exhibit lists, which the Case Management Plan required in November 2025 [Filing No. 19]; and

3. file a statement to show cause why sanctions should not issue for his non-compliance with discovery and CMP deadlines and his failure to appear at the February 18 conference.

[Filing No. 23.]

Plaintiff filed a show cause response on February 24, 2026. [Filing No. 24.] In his response, Plaintiff did not address the discovery or CMP non-compliance. He attributed his failure to attend the February 18 conference on technical issues with the Court's phone system. [Filing No. 24.] Plaintiff produced a purported screenshot of a call log suggesting he called the Court eight times between 9:54 a.m. and 10:52 a.m.—including two calls at 10:50 a.m., both of which lasted 1 minute, 37 seconds. [Filing No. 24, at ECF p. 3.] The call log lists multiple calls lasting several minutes—with one call over 19 minutes—even though the Court's voicemail

should have picked up after a few rings.  The Court is not aware of any issues with its phones on February 18 and received no voicemails from Plaintiff.

On March 4, 2026, Plaintiff moved for sanctions, alleging that defense counsel lied when she told the Court that Plaintiff had not answered interrogatories.  [Filing No. 25.]  In support of his request for sanctions, Plaintiff filed emails dated November 11, 2025, regarding the initial promulgation of Defendant's discovery requests; two emails from Plaintiff to defense counsel dated February 11, 2026, that contained an attachment entitled "Meijer's First Request for Production of Documents _ Johnathan House _ 11.11.2025.docx"; a medical authorization dated November 14, 2024, and issued to Meijer Risk Management; and a copy of Plaintiff's written responses to requests for production of documents.  [Filing No. 25-1.]  Plaintiff's March 4 filings contained no answers to interrogatories.  Also, Plaintiff's written responses to requests for production consisted of objections and refusals to produce records—despite the February 18 order's finding that Plaintiff waived all discovery objections by failing to timely assert them. Plaintiff's motion for sanctions also accuses defense counsel of "withholding" a "fully executed release authorizing access to all [Plaintiff's] medical records" and "acting as if such authorization is lacking."  [Filing No. 25, at ECF p. 2-3.]  However, contrary to these allegations, the authorization is unsigned and issued to the wrong entity.  [Filing No. 25-1, at ECF p. 3.] Moreover, the authorization is from 2024—predating the discovery requests and the litigation itself.

At the March 25 show cause hearing, Plaintiff adamantly attributed his failure to appear for the February 18 conference to the Court's phone system.  He told the Court he called "over 30 times."  [Filing No. 30, at ECF p. 9.]  When asked about his CMP non-compliance, Plaintiff admitted that he did not file his preliminary witness and exhibit lists or serve a statement of

3

special damages.  Plaintiff argued that it was burdensome to file documents in person at the

Clerk's office—although he acknowledged that he lived in Indianapolis, relatively close to the

courthouse.  Plaintiff stated that he may not call any witnesses at trial, and Defendant has all the

exhibits because he provided records informally pre-suit.  Plaintiff represented to the Court that

he submitted answers to interrogatories, but counsel for Defendant denied receiving them or any

exhibits to document production.  Plaintiff stated that he had evidence of his discovery

compliance on his cell phone and complained that he could not access this evidence because

courthouse security locked his phone in a nylon pouch.  Plaintiff did not ask the Court to open

the pouch.

During the hearing, the Court also addressed the hostile tone and inappropriate language

of Plaintiff's January 19 letter to Defendant's counsel:

| | |
|---|---|
| The Court: | Now, your response to their discovery, you called it pure garbage, you told them to stop the bullshit, you made personal attacks against counsel, calling her pathetic and incompetent and unethical, and said cut the crap.  Do you remember that? |
| Plaintiff: | I don't recall it all, but it sounds like me. |
| The Court: | Yeah, it's in the record at Docket 21-2.  You can't do that. |
| Plaintiff: | What did I - - what law did I break? |
| The Court: | Well, Rule 11 of the Federal Rules of Civil Procedure - - |
| Plaintiff: | Yeah. |
| The Court: | - - say you can't do - - do things that are harassing to the other side. |
| Plaintiff: | I didn't harass them.  I was responding. |
| The Court: | Well, calling it crap and garbage and telling them to cut the bullshit is inappropriate. |
| Plaintiff: | Adjectives. |
| The Court: | It's inappropriate. |

4

| | | |
|---|---|---|
| Plaintiff: | By whose standards?  What law? | |
| The Court: | Rule 11 of the Federal Rules of Civil Procedure. | |
| Plaintiff: | It doesn't cover all that. | |
| The Court: | It does. | |
| Plaintiff: | Oh, I - - I beg to differ. | |

[Filing No. 30, at ECF p. 7-8.]

A few minutes later Plaintiff interrupted the hearing, and the following exchange

occurred between Plaintiff, a court security officer, and the Court:

| | |
|---|---|
| The Court: | Who is going to handle this for the defendant?  Ms. Paige, step up here. |
| Plaintiff: | Excuse me, is there a problem? |
| The Court: | Did you - - |
| CSO: | Is there? |
| Plaintiff: | Why are you staring at me? |
| CSO: | Well, I really wasn't. |
| Plaintiff: | You're looking eye to eye. |
| CSO: | I am looking at you, but I'm not staring at you. |
| The Court: | That's the Court's security officer, Mr. House. |
| CSO: | Settle down.  I'm in here for a reason. |
| Plaintiff: | That's a - - are you here to intimidate me? |
| The Court: | No, he's not here to intimidate you. |
| Plaintiff: | Well, that's intimidating right there. |
| The Court: | He's a security officer. |
| Plaintiff: | That's intimidating. |
| The Court: | He is not being intimidating. |

[Filing No. 30, at ECF p. 11-12.]  Following this exchange, the Court proceeded with the

remainder of the hearing.

Following the March 25 hearing, the Court issued an order acknowledging that the parties disputed whether Plaintiff answered interrogatories and gave Plaintiff until April 1, 2026, to file a copy of his prior answers to interrogatories.  [Filing No. 27.]  The order also informed Plaintiff of the web portal that allows *pro se* parties to file electronically.

The day after the hearing—on March 26, 2026—Plaintiff filed his post-hearing motion. [Filing No. 28.]  In this motion, Plaintiff argues that, as a self-represented litigant, he should have the same privileges as an attorney, including cell phone access in the courtroom and electronic filing.  Plaintiff also alleges intimidation by the CSO during the show cause hearing and requests that future hearings are "conducted in a neutral and non-intimidating environment."  [Filing No. 28, at ECF p. 3.]  Plaintiff's post-hearing motion also expresses his intention to comply with the CMP—yet fails to include Plaintiff's long overdue preliminary witness and exhibit lists. Additionally, Plaintiff's motion alleges full compliance with discovery obligations and asks the Court to order Defendant to acknowledge prior receipt of his answers to interrogatories.

The exhibits to Plaintiff's post-hearing motion raise additional issues.  These exhibits include answers to interrogatories and a screenshot of an email to Defendant's counsel purportedly containing that discovery—both dated November 17, 2025.  [Filing No. 28-1.] These exhibits led Defendant to file a response in opposition to Plaintiff's post-hearing motion on April 3, 2026.  [Filing No. 29.]  Defendant states that it never received answers to interrogatories or the November 17 email before Plaintiff included them as exhibits to the March 26 post-hearing motion.  Moreover, Defendant alleges that Plaintiff fabricated the November 17 email screenshot.  Defendant identifies reasons to question the authenticity of the screenshot.  Despite extensive IT searches, defense counsel has been unable to locate the email.  The screenshot does not depict the subject matter line or body of an email.  The late production of these exhibits is

suspicious. Plaintiff never previously produced his answers to interrogatories or the email screenshot despite prior letters, filings, orders, and Court conferences on the issue of Plaintiff's discovery non-compliance. When defense counsel requested a copy of the original email for the express purpose of determining its authenticity, Plaintiff refused. Notably, Plaintiff has filed nothing to rebut Defendant's April 3 allegation that he fabricated evidence. Defendant's response brief also argues that Plaintiff's discovery responses remain deficient and that Plaintiff continues to engage in personal attacks, inappropriate language, and bad faith behavior, such as signing off emails with profane abbreviations, such as "GFY" and "GFYYSF," which the Court reasonably understands to mean "go f*** yourself" and "go f*** yourself, you stupid f***," respectively. Defendant asks the Court to award attorney's fees and issue sanctions.

The Court issued an interim order on April 29, 2026, directing Plaintiff to produce the original November 17 email and file a statement defining the allegedly profane and harassing abbreviations used in emails to defense counsel by May 12, 2026. [Filing No. 32.] Despite the Court's warning that "failure to produce the original email may result in an adverse inference regarding the email's authenticity," Plaintiff did not produce the original email or file a statement of abbreviations. [Filing No. 32, at ECF p. 4.] He emailed defense counsel on May 12 to state that he "lost" the original interrogatory answers and had to "redo" them. [Filing No. 34-1.] Plaintiff attached a PDF containing a new version of his answers to interrogatories. The May 12 email did not contain the original November 17 email or explain its absence. The new interrogatory answers produced on May 12 are unsigned, largely unresponsive, and often sarcastic. Plaintiff claims personal injuries in this lawsuit yet failed to identify a single medical provider. Plaintiff admitted to having past personal injury and criminal cases but provided no information about those cases. When asked the time of the subject fall, he wrote, "[I] forgot to

look at my watch when falling."  [Filing No. 34-1, at ECF p. 3.]  When asked about video and investigations related to this lawsuit, Plaintiff wrote, "I am trying to locate [M]atlock to investigate if I can[']t find Inspector [G]adget."  [Filing No. 34-1, at ECF p. 4.]

More recently, Plaintiff missed the January 18, 2026, CMP deadline to file his final witness and exhibit lists.

## II.    Discussion

### a.  Sanctions are appropriate for Plaintiff's repeated violation of Court orders and his failure to show cause.

Plaintiff failed to comply with the February 18 order.  Plaintiff belatedly submitted a statement of special damages and then blamed his failure to attend the February 18 conference on the Court's phone system.  Plaintiff filed a call log that contains suspicious duplicate entries and inexplicably long calls that are inconsistent with the Court's voicemail system, which is programmed to pick up after a few rings.  The Court received no voicemail from Plaintiff and is not aware of anyone else having difficulty calling chambers that day.  The Court is—at best—highly skeptical of Plaintiff's explanation and evidence submitted to explain missing the February 18 conference.

Even if the Court excused Plaintiff's failure to attend the February 18 conference, other requirements of the show cause order are clearly unfulfilled.  Plaintiff never filed his preliminary witness and exhibit lists.  Plaintiff has not responded to discovery fully and without objection. Plaintiff never produced any documents during this litigation, and his written responses to requests for production are inappropriately riddled with objections.  Cooperation in an informal pre-litigation investigation does not excuse a party from compliance with the rules governing formal discovery during litigation.  Furthermore, the November 14, 2024, medical records

8

authorization is not signed by Plaintiff or addressed to Defendant's counsel. As such, the authorization is useless and does not satisfy Plaintiff's discovery obligations.

Plaintiff has not proven that he timely responded to Defendant's interrogatories. A screenshot of an email is weak evidence. It lacks authenticating metadata. Defendant's concerns cast serious doubt on whether Plaintiff emailed his answers to interrogatories on November 17 as Plaintiff now alleges. Moreover, Plaintiff failed to produce the original email as required by the Court's interim order. The Court warned Plaintiff that failure to produce the original email may result in an adverse inference. [Filing No. 32, at ECF p. 4.] Under the circumstances, an unauthenticated screenshot of an email is insufficient to show that Plaintiff responded to interrogatories by March 4 as ordered. Additionally, Plaintiff's May 12 answers to interrogatories are replete with flippant, inappropriate, and unresponsive answers that mock the discovery process and disregard the order compelling "full and complete" responses to discovery. Furthermore, Plaintiff continues to disregard orders. Since the March 25 show cause hearing, Plaintiff has violated the interim order's directive to file a statement defining the seemingly profane abbreviations Plaintiff used as email sign offs and ignored the deadline for filing final witness and exhibit lists.

The Court will not tolerate Plaintiff's behavior. Sanctions are warranted for Plaintiff's violation of Court orders, failure to comply with discovery obligations, and inappropriate conduct directed at defense counsel. *See* Fed. R. Civ. P. 16(f) (authorizing courts to issue "any just orders" if a party fails to obey a scheduling or other pretrial order); Fed. R. Civ. P. 37(b)(2) (authorizing courts to issue "just orders" if a party fails to obey an order to provide discovery); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46, 57 (1991) (authorizing sanctions for disobedience of court orders and bad-faith conduct pursuant to courts' inherent power). Courts may sanction

discovery violations by establishing factual inferences, precluding evidence, striking pleadings, staying proceedings, or even dismissing actions. Fed. R. Civ. P. 37(b)(2). The undersigned declines to address whether dispositive sanctions are appropriate. Such relief is more properly before the district judge in connection with Defendant's motion to dismiss [Filing No. 34], which raises substantially the same question, including whether the filing of an allegedly fraudulent document warrants dismissal. Nevertheless, this order documents Plaintiff's inappropriate conduct in this litigation to the extent that this may be helpful to the district judge in addressing the motion to dismiss.

Plaintiff shall file a notice with the Court by July 10, 2026, identifying all medical providers who treated him for injuries he attributes to the subject fall. As to any medical provider identified, Defendant may provide Plaintiff with a medical records authorization, and Plaintiff shall execute and return that authorization within seven days of receipt. Having failed to file his witness and exhibit lists, Plaintiff is barred from introducing exhibits and calling witnesses not identified in Defendant's final witness and exhibit lists. [Filing No. 36.] Furthermore, Fed. R. Civ. P. 37(a)(5)(A) requires an award of attorney's fees when an opposing party takes a discovery position that is not substantially justified. Plaintiff's discovery conduct is wholly unjustified. Defendant prevailed on its motion to compel [Filing No. 21] and is entitled to reasonable attorney's fees incurred for drafting the motion to compel and attending the February 18 discovery conference and March 25 show cause hearing. At the March 25 show cause hearing, defense counsel advised the Court that her hourly rate is $240. This hourly rate is a reasonable rate for an experienced federal litigator, such as Defendant's counsel. Therefore, the Court awards Defendant $1,200 in attorney's fees—based on five hours at $240 per hour. While defense counsel undoubtedly spent well in excess of five hours on these tasks, the overall amount

of the award is reasonable given the simplicity of the legal issue raised in the motion to compel—a straightforward failure to respond—and Plaintiff's *pro se* status.  Moreover, Defendant's pending motion to dismiss [Filing No. 34] potentially exposes Plaintiff to additional sanctions.

### b.  Plaintiff's motion for sanctions is denied.

Plaintiff requests sanctions based on allegations that defense counsel blocked his emails and lied to the Court about receiving his discovery responses and medical records authorization. [Filing No. 25.]  However, the evidence shows that an email sent to a paralegal for the defense was undeliverable, but Defendant's attorneys of record received the email and never blocked Plaintiff's emails.  As discussed in the prior section, Plaintiff's "evidence" that he timely responded to discovery is unpersuasive, and the authorization he provided is deficient.  Thus, Plaintiff's allegations that defense counsel lied are unfounded.  Plaintiff's motion for sanctions [Filing No. 25] is denied.

### c.  Plaintiff's post-hearing motion is denied.

Plaintiff's post-hearing motion [Filing No. 28] seeks various forms of relief but warrants none.  To start, Plaintiff seeks an order requiring Defendant to confirm receipt of Plaintiff's discovery responses, including the purported November 17 answers to interrogatories. Defendant's response brief [Filing No. 29] details the limited discovery it received from Plaintiff and the glaring discovery deficiencies.  For the reasons previously discussed, Plaintiff's non-compliance with discovery is well documented.  Defendant need not file anything further on this issue.

Next, Plaintiff requests privileges such as electronic filing and permission to use his cell phone in the courtroom "for the purpose of displaying exhibits and records during hearings."

11

[Filing No. 28, at ECF p. 2.]  However, Plaintiff—like all *pro se* litigants—already has access to e-filing via the Court's web portal at https://www.insd.uscourts.gov/electronic-document-submission-web-portal.  Also, contrary to Plaintiff's arguments, the Court does not routinely permit attorneys or *pro s*e litigants to present exhibits on personal cell phones.  *See* S.D. Ind. Local Rule 79-1(a) (requiring evidence to be placed in the Clerk's custody during the pendency of the action).  Exhibits should be prepared in advance of a hearing and in a format that can be submitted to the Court, not saved on a cell phone.  Moreover, courthouse security locked Plaintiff's phone pursuant to standard security protocol.  *See In re: Security Procedures*, No. 21-mc-0001 (S.D. Ind. July 15, 2021) ("[A]ll electronic devices shall be turned off in the presence of Court Security Officers upon entry to the courthouse and placed in a locked pouch[.] . . . Devices shall remain in the locked pouch . . . while the owner is in the courthouse[.]").  While the order setting these protocols exempts properly credentialed attorneys, attorneys are subject to licensing and bar admissions requirements and ethical standards that justify the differing security measures.  Plaintiff is not an attorney and has not shown that he qualifies for an exemption to this policy.  If anything, Plaintiff's conduct demonstrates Plaintiff is ill suited for such an exemption.

Additionally, Plaintiff's allegations of impartiality and intimidation are baseless.  Plaintiff takes issue with perceived familiarity between the Court and defense counsel.  However, this is nothing more than civility.  Similarly, Plaintiff's allegation of intimidation by a CSO at the show cause hearing is baseless.  CSOs are responsible for keeping the courthouse safe and orderly.  There was nothing improper or intimidating in the CSO's behavior during the hearing.  Rather, as the transcript quoted previously demonstrates, Plaintiff—not the CSO—started the exchange that interrupted the show cause hearing.

Last, Plaintiff mistakenly claims that the Court accused him of failing to submit a proposed CMP. This is not the case. As the transcript reveals, the issue being discussed was not whether Plaintiff submitted a proposed CMP; rather, it was whether Plaintiff complied with the deadlines outlined in the CMP adopted by the Court, such as the deadlines for filing witness and exhibit lists. [Filing No. 30, at ECF p. 3, 5-6.] For all these reasons, Plaintiff's post-hearing motion [Filing No. 28] is denied.

### d. Defendant's requests for additional sanctions

As a final note, Defendant's response briefs argue that Fed. R. Civ. P. 11 and the Court's inherent authority entitle it to recover sanctions, including attorney's fees, for responding to Plaintiff's frivolous and improper motions. [Filing Nos. 26 and 29.] However, Defendant's pending motion to dismiss [Filing No. 34] reiterates these requests for sanctions and is a more appropriate vehicle for such requests. *See* Fed. R. Civ. P. 11(c)(2) (requiring parties to request sanctions "separately from any other motion").

### III.   Conclusion

For the reasons discussed above, the Court sanctions Plaintiff's inappropriate conduct as previously set forth. Plaintiff shall pay the $1,200 sanction directly to the law firm of Plunkett Cooney, P.C. within 30 days. Plaintiff's motion for sanctions and post-hearing motion [Filing Nos. 25 and 28] are denied. Defendant's motion to dismiss [Filing No. 34], including its request for additional sanctions and attorney's fees under Rule 11 and the Court's inherent authority, remains pending.

Date:  6/25/2026

_____

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

13

Distribution:

All ECF-registered counsel of record via email

JOHNATHAN HOUSE
3410 N. High School Road
Suite G 143
Indianapolis, IN 46224